# HARRIS v. STERN.

PATENTS; INTERFERENCE; FOREIGN INVENTORS; BURDEN OF PROOF; DILIGENCE.

1. Foreign inventors applying for a patent here, and who are placed in interference, are entitled under the law to claim the date they communicated their invention here as the date of their conception, and the date of the filing of their application here as the date of their constructive reduction to practice.
2. The burden is quite heavy upon a party to an interference who appeals to this court, where he is the junior applicant, and also comes here with the concurrent decisions of all the tribunals of the Patent Office against him.
3. In an interference proceeding involving improvements in electrical motors. where the senior parties conceived in March, 1901, and constructively reduced to practice by filing their application April 30, 1901, while the junior party claimed to have made a sketch and dis-

closure of the invention in July, 1899, and a device embodying the invention in August, 1899, but did nothing further until he filed his application about a year and nine months afterwards, it was *held* that his proof failed to show conception prior to the date of his application, but even if it did so show, he was not diligent in reducing to practice before the arrival of his opponent on the field of invention.

No. 223.   Patent Appeals.   Submitted May 13, 1903.   Decided June 2, 1903.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Walter F. Rogers* for the appellant.

*Mr. Albert G. Davis* and *Mr. Arthur A. Buck* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference case.   The subject-matter of controversy is an improvement in electrical meters, and is expressed in five several counts as follows:

"1.   In an alternating-current induction-meter, a body of good conducting material adjustably mounted in the path due to one of the meter-windings and so positioned that no turning moment will be produced thereby on the meter-armature, the said body being so mounted that it may be moved laterally with reference to said winding so as to include more or less of the lines of force due to the said winding."

"2.   In an alternating-current induction-meter, a body of good conducting material adjustably mounted in the path of the flux due to the shunt-winding of the meter and so positioned that no turning moment will be produced thereby on the meter-armature, the said body being so mounted that it may be moved laterally with reference to the said winding so as to include more or less of the lines of force to the said winding."

"3. As a means for adjusting the phase of the shunt magnetization in an alternating-current induction-meter, a body of good conducting material adjustably mounted between the poles of the shunt-magnet, in proximity to the meter-armature, in such a manner that it produces no turning moment on the meter-armature."

"4. As a means for adjusting the phase of the shunt magnetization in an alternating-current induction-meter, a body of good conducting material mounted between the poles of the shunt-magnet, in proximity to the meter-armature, in such a manner that it produces no turning moment on the same, and means for adjusting said body to include more or less of the lines of force due to the shunt-magnet."

"5. As a means for adjusting the phase of the shunt-magnetization in an alternating-current induction-meter, a body of good conductible material adjustable along a radial line between the poles of the shunt-magnet and mounted symmetrically with respect to a plane passing through the middle of the magnet-poles and the armature-shaft."

The invention, in other words less technical, consists in the introduction into the meter of a piece of copper metal, so mounted and so adjustable as to cut off more or less of the lines of force of the shunt-magnet winding and so as not to tend to impart a rotary movement to the meter-armature. The counts first appear as claims in the specifications of Stern and Lotz, the senior parties to the interference; and were suggested by the officials of the Patent Office to the junior party, Harris.

The appellees, Stern and Lotz, are foreign inventors, who filed their application for a patent in this country on April 30, 1901, and who are clearly and beyond controversy shown to have communicated it here on March 28, 1901. Under the law, therefore, they are entitled to claim March 28, 1901, as the date of their conception of the invention in controversy, and April 30, 1901, as the date of their constructive reduction to practice. And upon these two dates they base their claim of priority of invention.

The appellant, Harris, filed his application for a patent on

May 15, 1901, which was about six weeks after the application of Stern and Lotz; and he is therefore the junior applicant. He claims to have conceived the invention in controversy, and to have made a sketch of it in August of 1897; but this claim is wholly uncorroborated by any other testimony than his own, and it has been practically abandoned on argument. The claim insisted on is that he made a sketch and disclosure of the invention in July of 1899, and a device embodying the invention in August of 1899. It is not claimed that he did anything further in the matter until the filing of his application in the Patent Office, about a year and nine months afterward.

Upon the testimony, the tribunals of the Patent Office found unanimously in favor of the appellees, Stern and Lotz; and Harris has appealed to this court.

It will be seen that the burden is quite heavy upon the appellant to sustain his claim,—first, because he is the junior applicant; and secondly, in this court because he comes here with the concurrent decisions of all the tribunals of the Patent Office against him. No sufficient reason, indeed no reason whatever, has been shown to disturb those decisions. It has been held in them that there is total failure of proof on the part of Harris to show conception or disclosure of the invention by him at any time prior to his application to the Patent Office; and even if he had the conception, that he was not diligent in its reduction to practice before the arrival of Stern and Lotz on the field of invention. In these conclusions we fully concur. It is unnecessary for us to analyze the testimony to show how the conclusions have been reached: that has been fully and satisfactorily done in the three opinions rendered in the Patent Office, and especially and most elaborately in the opinion of the board of examiners-in-chief, which was carefully examined and affirmed by the Commissioner of Patents.

The burden of the argument before us on behalf of the appellant seems to be twofold: first, that the appellant had in fact a better case than he proved and might have shown it under more favorable auspices; and, secondly, that, if we take the case as a whole, and not merely in detail, it is evident that Har-

ris had, in 1899, the invention which he now claims to have had. We fail to find any force in either branch of this argument, notwithstanding that it has been very ingeniously and elaborately pressed by counsel, both in brief and orally.

We find it unnecessary to add anything to what was said by the Commissioner in the case.

We are of opinion that the decision of the Commissioner of Patents should be, and it is hereby, affirmed; and that judgment of priority of invention should be awarded to the appellees, Stern and Lotz.

The clerk of the court will certify this opinion and the proceedings of this court in the premises to the Commissioner of Patents, according to law.                              *Affirmed.*